WILLIAM N. JOHNSTON, RESPONDENT, *v.* SPENCER TRASK AND OTHERS, APPELLANTS.

*Sale of bonds under an agreement of the vendor to repurchase—when the latter agreement is not within the statute of frauds—what will excuse delay in tendering the bonds—authority of one partner to bind the firm by such a contract for repurchase.*

On January 18, 1882, the plaintiff entered into a contract with one Graves, the then managing partner of the defendants' firm, by which it was agreed that. the firm should buy for the plaintiff certain railroad bonds at the lowest attainable price at a commission of one-third of one per cent upon the purchase-price, and if at any time he did not want to hold them any longer the defendants would take them off his hands at what they cost him. The purchase was made and the plaintiff paid to the defendants their commission, and thereafter, by installments, the whole amount of the purchase-money. The bonds having fallen in price, and the defendants having refused to accept them when tendered, the plaintiff brought this action to recover the amount they had cost him.

*Held,* that he was entitled to recover; that the defendants could not claim that their agreement to repurchase was within the statute of frauds, as the plaintiff bought the bonds and the option as one entire purchase, and upon payment of the amount due the contract became fully executed, leaving nothing more to be done to complete his title to both.

After the purchase of the bonds their market-price declined to the knowledge of the plaintiff, who spoke to Graves about them, who advised him to hold them

as they would go up again; pursuant to which advice the plaintiff held them until April 30, 1884, when he tendered them to the defendants.

*Held,* that the defendants could not, under the circumstances, accuse him of laches.

*Held,* further, that in the absence of proof that the act of Graves was in excess of his authority, the court could not hold that it was unauthorized.

APPEAL from a judgment in favor of the plaintiff for $5,452.94, upon a verdict directed by the court at the Montgomery Circuit.

The defendants were partners, doing business as bankers and brokers. On the 18th of January, 1882, the plaintiff was in defendants' place of business when the defendant Graves, who was their managing partner, proposed to the plaintiff that he buy some income bonds of the Ohio Central Railroad Company, assuring him that they could be bought at a low figure and would soon rise in value; the plaintiff stated that he had no knowledge of the bonds. Graves then made explanation to him concerning them, and proposed that they should buy such bonds for him at the lowest attainable price, at a commission of one-third of one per cent upon the purchase-price, and if at any time he did not want to hold them any longer, the defendants would take them off his hands at what they cost him. The plaintiff accepted this proposition and directed the defendants to purchase ten of the income bonds, upon the terms proposed. The defendants did so at the cost of $4,800 — their commission being twelve dollars and fifty cents. The plaintiff paid the commission and from time to time, in installments, the whole purchase-money. After the purchase of the bonds their market-price declined, fluctuating somewhat, falling however, until the 30th of April, 1884, when they had fallen to ten cents on the dollar. On that day the plaintiff tendered the bonds to the defendants and demanded that they repay him what they cost him, namely, $4,800. The defendants refused. While the plaintiff held the bonds and until he tendered them to defendants, he was advised of their market-price and frequently spoke to Graves about it. Graves advised him to hold them, that they would go up again.

Upon the close of the plaintiff's case, no evidence was offered by the defendants, and no request was made by them to submit any questions of fact to the jury.

The defendants requested a direction that the jury render a verdict in their favor. This was refused, and an exception taken

*Horace E. Smith*, for the appellants.

*John M. Carroll*, for the respondent.

LANDON, J.:

The defendants having made no request to submit any question of fact to the jury, and having moved for the direction of a verdict in their favor, they consented that the court should pass upon whatever disputable inference of fact might be deduced from the testimony. (*Dillon* v. *Cockcroft*, 90 N. Y., 649; *Ormes* v. *Dauchy*, 82 id., 443.)

They, therefore, cannot be heard to complain if the court, as will be presumed on appeal, resolved such inferences so as most strongly to support the verdict directed. (Cases, *supra*.) It may be assumed then, that the plaintiff when he accepted the defendants' proposition accepted as an entirety both their proposal to purchase the bonds for him, and their proposal to take them off his hands at their cost at any time when he did not wish to hold them longer. He bought the bonds and the option as one purchase, and owned the option by the same right from purchase as he owned the bonds. (*Fitzpatrick* v. *Woodruff*, 96 N. Y., 561; *Wooster* v. *Sage*, 67 id., 67; *Allen* v. *Eighmie*, 14 Hun, 559; S. C., 79 N. Y., 632.)

The objection of the defendants that their agreement to purchase the bonds from the plaintiff was within the statute of frauds because not in writing, rests upon an assumption contrary to the presumed finding of fact; that this was an independent contract separately made. But when the plaintiff bought and paid for his option, it was his by an executed, not an executory purchase, and nothing remained to be done to complete his title to it. (Cases, *supra*.)

The plaintiff, therefore, had the right to use his option to the extent of the privilege given by it. That privilege was to use it within a reasonable time. (Same cases.)

The defendants urge that he did not so use it. He waited from January, 1882, until April, 1884, with full knowledge of the depreciation in the price of the bonds. This delay, upon a constantly falling market, would no doubt be held unreasonable, and a waiver of the option, if the defendants themselves had not been instrumental in causing it. But to plaintiff's repeated references to the depreciation in price, the defendants, through Graves, advised

him to hold on to the bonds and encouraged him to do so by predicting better prices. The defendants ought not to be heard to complain of a delay which they promoted; they were parties to it, and the trial court might well find that under such circumstances it was not unreasonable as to them. (*Fitzpatrick* v. *Woodruff; Wooster* v. *Sage, supra.*)

The defendants further urge that Graves, then managing partner in their business as brokers, had no authority to bind them by his contract giving the plaintiff this option. What kind of concurrent or optional contracts the defendants might think it expedient to make to stimulate their business, as brokers, was a question for them to determine. This contract does not seem to be so obviously apart from their ostensible business as to put a customer upon inquiry as to the managing partner's authority to make it; and in the absence of proof of the fact that it was in excess of his authority, we cannot, from the mere fact that the event showed it to be unwise, hold that it was also unauthorized.

The judgment should be affirmed, with costs.

LEARNED, P. J., and BOCKES, J., concurred.

Judgment affirmed, with costs.